Everyone, Judge Van Antwerpen and I are pleased to welcome Judge Wallace Tashima, a senior judge on the Ninth Circuit, who's joining us here today and joined Judge Cowan and myself earlier in the week. We're glad to have you, Judge Tashima. Thank you for your service to the Ninth Circuit. Thank you. It's a pleasure to be here. Okay, and with that, we're going to call the first case here, which will be D. E. Miner on his behalf by his parents, Maria English and Ronald Sheffy v. Central Dauphin School District and Mr. Mallard. May it please the Court, my name is Joel Mallard and I represent the appellant D. E. With the Court's permission, I'd like to reserve three minutes for rebuttal.  Thank you. Your Honors, this case is about a student with severe learning disabilities who was deprived for nine years of the free appropriate public education guaranteed to him under federal law. May I ask you something? This is not really an appeal that you could have taken and didn't take. This is an enforcement proceeding, right? You're seeking to enforce the order that you got. One of our claims is indeed to enforce the administrative award, yes. Now, do we have the power in this type of proceeding to interpret the order that you got or to modify it somehow? Do we have that power in this proceeding? Yes, Your Honor. This Court has the equitable authority to enforce this order. In doing that, could we interpret it to require the school district to set up a fund? Absolutely, Your Honor. That is something that is within this Court's authority to do as well. This case is brought under the I.D.A. and the federal courts have broad equitable discretion to craft the remedies in these cases. Do you have a case that specifically says that? Not off the top of my head, Your Honor. I'm sorry, I don't... It's okay. Relax. Well, wouldn't one of the cases that says that, it might be at the end of your argument, but in a way it sort of answers Judge Van Anterpen's question. It's Nevis-Marcus v. Puerto Rico. Didn't they, in effect, sort of craft a remedy in the First Circuit somewhat similar to what you're asking for here? Yes, that is correct, Your Honor. In that case, they did. In addition, the SJB case as well, which is a Southern District of New York case, they also enforced one of these awards and crafted a remedy similar to the one that we're asking for here. All right. We've got a number of arguments here, so why don't you get started on them? Sure. So for the reasons set forth in our brief, we're asking this Court to reverse two orders of the District Court, one that granted summary judgment on D.E.'s claim for request for court enforcement of his administrative award. Today, I'll address the key points in support of our position. First, the District Court erred in granting summary judgment on D.E.'s discrimination claim under the ADA and the Rehabilitation Act for one reason. There exists a genuine issue of material fact as to whether the school district was deliberately indifferent to his right to a free, appropriate public education. What is the evidence that shows or from which you could infer a deliberate indifference? Your Honor, the administrative hearing order that was submitted by the appellees in support of their motion for summary judgment clearly shows that for nine years, the school district failed time and again to provide any services related to D.E.'s language-based learning disability, which the school district knew that he had from the get-go, from the time that he entered into the school district. Couldn't that just have been negligence? Your Honor, the record suggests that the school district indeed had noticed that D.E. had a language-based learning disability and yet failed to provide services. That's, at this point in the proceeding, in a summary judgment proceeding, that's more than enough to survive summary judgment and proceed to trial. Now, you base your factual foundation, it's a little bit of what Judge Shima asked, on the findings of fact that the administrative law judge issued in the IDEA action, correct? That's correct. Now, the definitions are different and the laws are different. Are those factual findings enough to support, to be the basis for a genuine, to support a genuine issue of material fact on the liberty and indifference question? Yes, Your Honor. We're not requesting this court to find collateral estoppel here. We're simply offering the factual findings as evidence of the facts that are found within that order. The defendants, the appellees, have offered no evidence to contradict the facts that were found in that order. And they didn't appeal from those findings? They did not appeal from those findings either. And in fact, it was the defendants who submitted those findings to the court along with their motion for summary judgment. So that is the record on which this court has to base its decision as well. And that record is clearly something that shows deliberate indifference on the part of the school district. It shows, as I said, that for nine years they failed to address his language-based learning disability. It also shows repeatedly they segregated DE from his peers and placed him in restrictive learning environments without conducting the proper evaluations, without justifying those placements at all. Those placements were apparently based, each of them, on nothing more than the whim of the school district. And the record shows that those placements were very harmful to DE. Why would you say the whim of the school district? Van Antwerpen asked, couldn't it have just been negligence? Couldn't it have been simple mistakes by administrators in the school system who weren't intentionally trying to discriminate against your client but just chose the wrong path? Your Honor, it certainly could have been negligence, but that's not what the evidence that we have before us now suggests. The evidence in the hearing order clearly states that there was nothing in the records to support the placements, which means that the placements, according to the record we have now, were arbitrary. The school district had a duty... Well, why do you say they're arbitrary? Why couldn't they just be negligent? Well, Your Honor, the school district had a duty to place DE in an environment that was tailored to his needs and to place him in the least restrictive environment and to consider less restrictive options before placing him in these restrictive placements. Yeah, because school districts across Pennsylvania and across America have difficult decisions to make. In this case, which spanned nine years, no one was quite sure, it seems to me, as to what DE's exact disabilities were, or if, in fact, he did have learning disabilities. I mean, this wasn't a clear-cut case like some we see. Would you acknowledge that? Well, Judge Fischer, I would say, based on the record that we have before us, that perhaps the school district didn't know what was going on, but partially it's because the school district didn't conduct the evaluations that it was required to conduct. Instead, it haphazardly placed DE in these placements that had nothing to do with the disabilities that he had. At one point, the school district classified DE as having mental retardation and placed him in life skills, a placement that is meant for students with severe disabilities. Which seems to be a negligent act, doesn't it? Your Honor, the record says that, quote, there is no data to support the notion that the student should be in life skills. Now, if there's no data, that would... When it comes down to it, I think your strong argument is that, well, maybe it could have been negligence, you know, nine years of negligence, but that fact pattern for that length of time also supports an inference of deliberate indifference, and all you're saying is that, not necessarily that they were, but that you're entitled to have a facts finder make that decision. That is absolutely true, Judge Teshima. If we moved over to the IDEA claim, the order, as it exists now, says that the school district may set up a fund. Now, how do you make that mandatory? Well, your Honor, taken as a whole, the order clearly says, in the order section of the order itself, at the very end, it says, central Dauphin school district is ordered to provide the compensatory education in the amounts above. They have placed, essentially, by taking this stance on what the order means, they've placed the burden of implementing this education on D.E. and on his parent, and that is clearly not the way that the IDEA works. That is not, that's not what this hearing order intended, so. Well, wouldn't the order appear to give some discretion to the school district? This order gave a lot of discretion to D.E.'s parents. I just want to correct something for a second. How much time do we have left on the clock? I don't want you to be, I think the clock was telling you to sum up a bit prematurely. Oh, thank you. I know you're not a veteran in this court, so I don't want you to be concerned about that clock. We'll tell you when your time's up. Oh, thank you, I appreciate that. So, yes, the order, the order provides that central Dauphin must provide the compensatory education. In the paragraph preceding that order, it gives the parents flexibility to do a lot of things that wouldn't necessarily be part of other hearing orders. For instance, it allows the parents to choose the services. Let me say this. Could the M.A.E. set up a fund? Could that be there to protect the parents in case they do advance the money? Yes, absolutely. That is a sentence that clearly is trying to put forth an option that would be beneficial to the parents. And like other IDA hearing orders, this order does not require a certain arrangement for paying for the education. It merely says that to the extent, it allows the parents to go out and pay up front and seek reimbursement should that be the decision that they make, but does not require the parents to do so. By its plain language, it doesn't require the parents to do so. So you're saying we could interpret that second provision as mandatory and require the school district to take necessary steps to provide the relief for it, right? Yes, Your Honor. That's precisely what I'm saying. Mr. Mallard, you don't have too much time, but I want you to address the one subject. I think there's an issue here under the IDEA of whether you exhausted your administrative remedies, right? Well, Your Honor, the defendant argued that we failed to exhaust our administrative remedies because we didn't appeal from this hearing order. You could have appealed, couldn't you? Well, certainly the appeal was theoretically there. However, DE had no reason to appeal because he prevailed in the administrative hearing. If you prevailed, then why are you here on appeal? Because the school district has failed and refused to provide the compensatory education that it was ordered to provide, taking the position that DE was the one that bore the burden of procuring those services, which DE was unable to afford to do and was not required to do under the hearing order. I think the problem you have is the word aggrieved. On one hand, you weren't aggrieved, so therefore you didn't appeal to the state agency. But on the other hand, you're here in court on a civil action, and the section I-2 says that the right to bring a civil action, any party aggrieved, they bring a civil action. So if you weren't aggrieved and you didn't file the appeal, which the school district says, how do you become aggrieved to be able to bring this civil action? Well, DE is certainly aggrieved now by the school district's refusal to provide the services that it was ordered to provide in the administrative hearing order. And as other courts have recognized, including the Eastern District of Pennsylvania and then Chief Judge Bartle, he said it would be anomalous indeed to read the IDEA as omitting a remedy to the student who prevails in the administrative process, but to allow the student who loses in the administrative process to bring a claim. It would create a huge loophole in the IDEA if these students were unable to enforce the awards that they received. And there's really no reason for the court to read in such a loophole. In fact, as Chief Judge Bartle mentioned, statutes should be interpreted to avoid absurd results such as that. If we disagreed with you on this appeal, where would your client be? Where would your client be in light of the order by the administrative hearing officer? Well, theoretically, Your Honor, the order is still as it is written, and DE would be unable to collect any services that he was awarded. Why would that be? Because the school district has taken the position that DE has to pay for those services first. And he simply doesn't have the money, and there's simply no reason for the school district to have taken that position. And you had no reason at the time. You basically thought you got everything you needed when you prevailed administratively, right? Yes, that's exactly true. You foresee that the school district wouldn't proceed to provide these services, right? That's correct, Your Honor. That is not how these things go in the IDEA context. DE won, and he should have received the compensatory services to which he was entitled. But you kind of didn't complain very much along the way, did you? I mean, you weren't knocking on the door of the school district every other month, complaining about this, were you? Your Honor, the record is not clear as to all the communications that occurred after the time of the order, but it does make it clear that the school district took the position and refused to consider any other arrangement beyond DE fronting the money. So at that point, there's nothing more that DE could do except to bring his claim here to court. Okay, and we'll have you back on rebuttal. Thank you. Mr. Specht. I may please the Court, Your Honor. My name is Thomas Specht, and I'm representing Central Dauphin School District in this appeal. We are the appellee, of course. All right, and taking up on where Mr. Mallard left off, what is DE to do if your position is correct? Well, if our position is correct, he should try to obtain the services that he says that he requires. Okay, assuming the services are out there, let's assume he doesn't have the funds. It's like most people wouldn't have the funds to advance the funds. Are you saying that your client will not pay unless he puts the money out and he gets himself in a position where you can reimburse him? Is that your position? Your Honor, our position is that we're going to comply with the order. I didn't ask that question. Are you not going to pay unless he puts the money out to the agency who provides the compensatory education? That's been the position of the school district. Doesn't that make the order a nullity? You just heard them say they can't afford to pay. Doesn't your position effectively make that order a nullity? I don't think it makes the order a nullity if things had been done the way they should have been done to pursue the relief that he needed. What was that? If they had read the opinion and realized that it didn't have the enforcement mechanism or the funding mechanism that they required, then they were technically aggrieved by that order. Doesn't the order say you are, not may, are, A-R-E, to provide compensatory education? Isn't that what it says in there? It does say that the Central Dauphin School District is ordered to provide DE with compensatory education in the form and amounts above. But above is the key word there, Your Honor, and above it says that the parent may decide how the hours should be spent and that reimbursement for the services, reimbursement, not prepayment, not paying before you get the services, reimbursement for the services, shall be at the rate that the parent is obligated to pay, not a district-determined rate. And so the order, referring to the opinion above, says that the parent is the one who is obligated to pay and that the school district is only obligated to reimburse. All right, let me change the facts slightly. Let's suppose that after this case is resolved, let's suppose you prevail in this appeal, that DE with counsel comes forward to you and says, I found the provider that's going to provide this compensatory education. And he's not going to require me to pay anything so long as you agree, because of the order that's been entered, to pay for the services. Will Central Dauphin do that? The provider would not charge anything? The provider would charge you. Would you agree to that arrangement? Your Honor, I don't know what the school district will agree to at that point. I'm asking you on a hypothetical. A hypothetical. So if you were advising the school district, what would you tell them? Your Honor, I really don't know what I would advise at this point. So you have some question as to whether or not the school district would even enter into that kind of an arrangement. I don't know their thought processes. You're saying you wouldn't allow DE to assign his right for payment for compensatory education to the provider. Your Honor, an assignment might be a closer call. I don't want to speak for my client out of turn and bind them to something. Well, you're here to speak for your client. I know, but I'm not here to speak for them on that hypothetical situation. Well, that's more than just a hypothetical, as you must realize under the facts of this case. Well, Your Honor, the facts of this case, we're trying to abide by what the order said, the order the hearing officer said. And to me it was clear that they were aggrieved. If what they really wanted was a fund to have prepayment for their services, they were aggrieved and they should have appealed. It's not the district's fault that they did not appeal to get what they wanted. And actually in some of their previous filings in the state court, they agreed that they had waived their IDA compensatory education claim. Do you feel that under Nevis and SJV that we have the power to interpret the order or modify it to require that you set up a fund? I don't. Why not? I think that should have been done at the local level with the expertise of the local agency weighing in on the order. That's the purpose of that. Do you disagree that those cases basically imply that we would have the power in enforcing this to interpret it to require it? I think that obviously you could interpret in order, but I don't think you could modify it. I think that would be something that would have to be done by the administrative agency with the expertise itself. I mean, they may not have, due to the size of the award, may not have wanted the school district to pay a large lump sum. That's something that wasn't pursued on appeal. I don't know when anybody's talking about a large lump sum. Well, to institute payment, prepayment of sums. I don't know when anybody's talking about a large prepayment. Well, I think in some of their filings they have talked about monetary damages and prepayment of a fund. I may have added the word large. So your position is Nevis is wrongly decided. I do, Your Honor. Do you really think Congress would intend the result like we have in this case right now? I think this is a weird factual situation, Your Honor. I think it's a factual situation where the ball may have been dropped on the other side, where if they were aggrieved by the order, which it appears that they were based on the plain language of the order, they should have appealed. And that they didn't, it leads to a result that this Court may have to hold its nose to, but it's still the right result. Do you think it's reasonable for them to assume that the school district would be as unreasonable as they're being? Well, I think it's reasonable for their counsel and for them to assume that the school district will abide by the order. And if the order doesn't have the mechanisms and the funding in it that they desire, that they should appeal it to abide by the law. Well, you think it would be fair to interpret this action as an enforcement action. In other words, that it didn't require administrative exhaustion because he's not challenging the order. His only claim is that, well, the school district failed to follow the order. And he's saying if something's ambiguous about it, the Court has the authority to correct those ambiguities. If the order is read in that light, you agree that there's no exhaustion problem? No, Your Honor. I think even if it was an enforcement action, which I don't agree that it would be, because there is no enforcement mechanism, but even if it – When you say no enforcement mechanism, you mean in the order itself? Yes, other than the order says that if the parties would agree, the district may set up a fund. But if it was an enforcement action, I would still think that they would be – they would have to appeal that as well because there is no enforcement mechanism in the order. Why don't you talk about the deliberate indifference question under the RA and ADA? Your Honor, the deliberate indifference – our position is, Your Honor, that the school district, while they may not have perfectly implemented the plans, the educational plans that DE may have needed during his career in the Central Dauphin School District, there is no evidence of deliberate indifference or intentional discrimination on the part of the district. The record shows that the district every year instituted IEPs, many of them which were agreed to by the parents of DE. They instituted for many of the years. Well, didn't the hearing officers make a finding that the school district's usual practice was not to place DE in the least restrictive environment? Well, I think based – they did make that finding in the record, Your Honor, but I think by that they meant that based on the IEPs that had been implemented, based on the evaluations that had been done, they had been mistakenly placing him in these – It's an intentional act. It's – I guess it defines – it's how you define intentionally. They did it so they would have intent to do it, but intentionally, and the fact that deliberate indifference to his rights, no, it wasn't done in that manner. And actually the record shows that, you know, the words used are mistakenly vague and ambiguous, things of that nature, and that is not enough to support a finding of deliberate indifference. But at the stage you were in, when you were on a motion for summary judgment, doesn't – I mean, nine years of mistakes, let's call them mistakes, doesn't there come – doesn't an inference arise from all of those facts that were found by the hearing officer that there at least might be a genuine issue of material fact as to whether or not the district was deliberately indifferent? Well, Your Honor, nine years, I agree, is a long time, but the hearing officer in this case, their order was entered in hindsight, honestly. I understand that. And during the time that this was going on, the school district was attempting to comply with its duties under the IDEA. The record shows that he received speech and language therapy services that were appropriate and uninterrupted, that he had IEPs every year, that he had evaluations many of the years. They were just problems with these IEPs, problems with the program itself, which isn't a basis for finding of deliberate indifference, according to the cases that we cite in our brief. I mean, I don't know – we don't have all the history of cases that have been adjudicated against Central Dauphin or other districts, but in cases I've seen come before this Court, and what knowledge I may have of special education in the Commonwealth, I don't remember another case where somebody found that they were entitled to 10,000 hours of compensatory education for neglect over a period of nine years. Well, I think, Your Honor, part of the problem in this case was that the statute of limitations in IDEA was passed after this case arose. So a lot of these cases are cut short for a set period of time. But I think – But am I accurate that this is probably the top limit? You may be right on that, Your Honor. I'm not familiar with all of them either myself. Is there any inference we can draw from that? Well, Your Honor, I think that's, again, just going to the nine years. I think you need more than just a time period. I think you need specific knowledge and, you know, deliberate action, not bureaucratic inaction or mistakes. And I think that's all the record shows is just negligence, mistakes, malpractice, nothing deliberate on the part of the school district. Judge Stengel ruled on your motion for summary judgment, I believe, in January of 2013. Yes. In September of 2013, our court decided the case of S.H. versus Lower Merion School District. Does that case change the analysis at all? S.H., Your Honor, I don't believe changes the analysis because, again, it talks about that intentional discrimination is required and that, you know, requires, again, that knowledge and deliberate action on the part of the district, not, again, not these, you know, mistaken IEPs or failure to maybe objectively base, you know, what its recommendations in the IEPs were based on. It requires something more than that. It requires things, you know, where I think the Chambers case decided by this court was what they called a close case. And in that case, there were specific instances where the school district was told to do this and that they should do that and they deliberately did not on multiple occasions, serious and repeated failures, indeliberate, you know, indifference to rights. And we don't have any of that here on this record, Your Honor. And, you know, based on the record, which, again, has not been supplemented on discovery or anything of that nature, I think this court must affirm the summary judgment on the ADA and RA claims. Okay. Do you have anything else? No, I don't, Your Honor, unless this court has any other questions. Okay. Thank you. Mr. Mallard. Thank you. I'd just like to address a few quick points. First, Judge Fischer, you mentioned that the nine-year pattern, that there could be a reasonable inference drawn as to deliberate indifference, and we certainly agree that that is true. But in this case, we also have evidence that the school district, in fact, knew that DE's rights were being violated and yet did nothing about it. The hearing officer specifically found on the bottom of page 23 of the hearing order, which is at Joint Appendix 105, that the school district knew that the student had more needs than those that it initially addressed. It found on paragraph 6 of the hearing order that the student's disabilities were apparent from the get-go, but yet the school district continuously failed to provide any services related to the disabilities that he had. Furthermore, when it placed him in the restrictive settings, not only were those settings not based on anything that the district had in its records, seemingly arbitrary, but the school district ignored teachers on three different occasions who came forward and questioned DE's placement in those classrooms. That clearly shows that it was more than just negligence. They not only had no basis, but they were getting questioned, and yet they left DE there. And so there is evidence, Your Honor, that the school district knew what it was doing and that it just took those steps with disregard for DE's rights. Furthermore, Your Honor, the district court did not have the benefit of the SH case or the Chambers case. The SH case set forth the deliberate indifference standard. The Chambers case showed how that standard applied to facts quite similar to those in this case, and the district court was clearly not clear on what the appropriate standard was. Are you talking about Chambers versus the school district of Philadelphia? Yes, Your Honor. That was an NPO, was it not? It was, so it is not precedential, but it does show how this court would apply the deliberate indifference standard to a very similar case. Do you think the facts are sufficiently similar? Yes, I believe the facts are sufficient. The parents in that case had repeated complaints. They were knocking on the school district's door constantly, weren't they? Yes, the parents in that case were trying to get these services for their student. The school district failed to provide them. But the school district in this case had similar notice that DE required services for his language-based disability. And they won repeated complaints, and the school did nothing. Your record doesn't really show the same repeated complaints here, does it? That's correct, Your Honor. But as Chambers said, reasonable minds can disagree as to whether the conduct amounts to deliberate indifference, but that's not the test on summary judgment. And here we're arguing the same thing, right? We're entitled to every reasonable inference. We're entitled to every reasonable inference, and there is enough evidence on the record to move this case forward to trial. Your Honor? All right, Mr. Mallard. Thank you very much. Well, thank you very much. Thank you to both counsel. And I also want to thank the firm of Deckard LLP for their supervisory role that they've played working with the University of Pennsylvania. And to Mr. Mallard, I hope that you had a good experience with this case. I might say that from the various issues that were raised on the other side, I think maybe you learned some of the potential pitfalls that an appellate advocate can fall into if certain action or inaction is taken. Perhaps you can learn from all of that. But I commend both counsel for arguments that were very good, and we'll take the matter under advice. Thank you. Thank you.